## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL ERNANO, on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>GARY MELIUS, JOHN ANTHONY DIPRETA, KATHY THOMPSON, FABIAN SANTIBANEZ, OHEKA MANAGEMENT CORP., OHEKA CATERING, INC., OHEKA MANAGEMENT, LLC, OHEKA CATERING, LLC, and JOHN DOES 1 through 10,<br><br>Defendants. | Case No. 2:2014-cv-1516<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiff, by his undersigned counsel, alleges upon knowledge as to himself and upon information and belief as to all other matters as follows:

### NATURE OF THE ACTION

1.      Defendant Gary Melius owns and resides at Oheka Castle ("Oheka Castle" and the "Castle") in Huntington, New York.  Mr. Melius has used the Castle and its grounds as a luxury hotel, restaurant and catered event space.  He has operated the business affairs of the Castle through several corporate entities including Defendants Oheka Catering, Inc. ("OCI"), Oheka Management, LLC ("OML"), Oheka Catering, LLC ("OCL") and until recently Oheka Management, Corp. ("OMC," and collectively with OML, OCI and OCL, the "Oheka Entities"). The Castle is managed by Defendant Gary Melius' sons–in-law Defendants John Anthony Dipreta and Fabian Santibanez as well as Kathy Thompson (together with Gary Melius, the "Individual Defendants").

2.     Plaintiff Michael Ernano ("Plaintiff") worked for Defendants as a server and bartender in connection with the Castle's restaurant and catering operations.

3.     Oheka Castle is the second largest private residence in the United States and has been valued at more than $43 million.  The Castle reportedly served as inspiration for F. Scott's Fitzgerald's novel, *The Great Gatsby* and the property substituted for Charles Foster Kane's palatial estate, Xanadu, in Orson Welles' 1941 film *Citizen Kane*.

4.     Defendants advertise that the Castle can host lavish catered events for as many as 400 guests for a sit down dinner and can accommodate up to 1,000 guests for "Gatsby style" events. According to Defendants' website:

> [Oheka Castle] is admired as a premier venue to host society weddings, gala celebrations, and corporate retreats. OHEKA is also an historic hotel with 32 luxury guestrooms and suites on the upper floors of the estate and has been the backdrop to many famous music, television, film and photo productions since the making of the classic film, "Citizen Kane", to the present day TV series, "Royal Pains."



5.     Along with the incredible opulence of Oheka Castle, comes a hefty price tag reaping substantial revenues for Defendants Gary Melius and the Oheka Entities.  On an episode of the reality television program, *Bridezillas*, one bride-to-be mortgaged her house in order to finance her fairy tale wedding at the enchanting Oheka Castle.  Defendant Gary Melius boasted

that revenues for Oheka Castle were $3.6 million in 2011 and that the Castle was on target to take in more than $3.8 million in 2012.

6.      Despite earning millions from the labor of their servants, behind the castle walls, Defendants intentionally violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*,  and New York State Labor Law and regulations promulgated thereunder ("NYLL") in order to keep more of those revenues for themselves and cheat their workers of wages and tips. Defendants have deprived their employees of overtime premiums and failed to pay them for all hours worked, and failed to pay them in a timely manner.  Moreover, Defendants failed to pay their servers and bartenders spread of hours premium pay and misappropriated their tips

7.      First, Defendants deprived their workers of overtime premium pay.  Defendants developed a fraudulent timekeeping scheme in order to avoid the payment of overtime premiums to their staff.  When class members worked more than forty hours in a single workweek, they were required to carry over their hours into subsequent weeks, so that Defendants' records would not reflect that they worked more than forty hours in a given workweek.  In addition, Defendants regularly required workers whose hours approached forty hours in a workweek to clock out of Defendants' biometric timekeeping system and continue working.

8.      Second, Defendants failed to pay Plaintiff and other Class Members for all hours worked in a timely manner as required by the NYLL.  For instance, Plaintiff was required to work four shifts without any compensation from Defendants whatsoever during a "probationary period."

9.      Third, Plaintiff and other servers and bartenders regularly worked more than ten hours in a single workday.  However, Defendants failed to pay them a "spread of hours" premium as required by the NYLL.

10.     Fourth, Defendants misappropriated tips belonging to servers and bartenders in at least two ways.  First, Defendant Gary Melius personally confiscated cash tips left by patrons for Plaintiff and other service staff.  Moreover, Defendants have charged patrons of their restaurant and catering services, a "service charge" of up to 22% which is added to the bill.  At times relevant to this Complaint, Defendants have led patrons to believe that the service charges would be paid to the service staff.  However, Defendants did not remit any of those charges to the service staff.

11.     Plaintiff, on behalf of himself and those similarly situated employees of Defendants, brings this action as a class and collective action for unpaid overtime pursuant to the FLSA and the NYLL, compensation for all hours worked and timely payment of wages pursuant to the NYLL, liquidated damages, attorneys' fees, costs and interest.  Plaintiff also brings this action on behalf of himself and others similarly situated servers and bartenders for unpaid spread of hours premium pay pursuant to New York State Department of Labor Regulations, NYCRR § 146-1.6  and for the payment of wrongfully withheld gratuities pursuant to NYLL § 196-d, liquidated damages, attorneys' fees costs and interest.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiff's federal claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's New York State law claims pursuant to 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over each of the Defendants because they are each domiciled in New York.

14.     Venue is proper in the Eastern District because Defendants conduct business in Suffolk County, New York, and the acts and/or omissions giving rise to the claims herein allegedly took place in Suffolk County.  Moreover, each of the Defendants is domiciled in this District.

**PARTIES**

15.     Plaintiff Michael Ernano is a resident of Suffolk County.  Plaintiff worked as a server and bartender at Oheka Castle from approximately November 2010 to December 2011.  He generally worked between thirty-five and fifty hours per week.  He worked in excess of forty hours in a workweek several times per month during the Castle's busy season without ever receiving any premium for overtime hours.  He worked more than ten hours in a single workday approximately three times per month, but never received spread of hours premium pay.  When Plaintiff began working at the Castle, he was required to work four probationary shifts, for which he received no compensation from Defendants at all.  In addition, approximately once per month, Plaintiff was required to clock out of Defendants' biometric timekeeping system and keep working without pay for an additional one to two hours.

16.     Defendant Gary Melius is the owner and resident of Oheka Castle in Huntington, New York, sole shareholder of OCI, and former president of OMC.  He is in active control and management of the Oheka Entities, regulates the employment of persons employed by the Oheka Entities, acts directly and indirectly in the interest of the Oheka Entities in relation to the employees, and is thus an employer of Plaintiff and the Classes (as defined below) under the FLSA and NYLL.  Moreover, Defendant Gary Melius personally confiscated tips belonging to Plaintiff and Class members.

17.     Defendant John Anthony Dipreta is and was a Banquet Manager of OCI and resides in Huntington, New York.  He is in active control and management of one or more of the Oheka Entities, regulates the employment of persons employed by one or more of the Oheka Entities, acts directly and indirectly in the interest of Defendant Gary Melius and the Oheka Entities in relation

to the employees, and is thus an employer of Plaintiff and the Classes under the FLSA and the NYLL.

18.     Defendant Fabian Santibanez is and was Hotel Manager of Oheka Castle and resides in Huntington, New York.  He is in active control and management of one or more of the Oheka Entities, regulates the employment of persons employed by one or more of the Oheka Entities, acts directly and indirectly in the interest of Defendant Gary Melius and the Oheka Entities in relation to the employees, and is thus an employer of Plaintiff and the Classes under the FLSA and the NYLL.

19.     Defendant Kathy Thompson is and was a Banquet Manager of OCI.  She is in active control and management of one or more of the Oheka Entities, regulates the employment of persons employed by one or more of the Oheka Entities, acts directly and indirectly in the interest of Defendant Gary Melius and the Oheka Entities in relation to the employees, and is thus an employer of Plaintiff and the Classes under the FLSA and the NYLL.

20.     Defendant Oheka Management Corporation was a New York corporation with its principal place of business in Huntington, New York.  Defendant Gary Melius was President of OMC and his wife Pamela Robb Melius was the company's sole shareholder.  On December 31, 2010, Defendant Gary Melius and Pamela Robb Melius merged OMC out of existence and into one or more of the other Oheka Entities (the "Oheka Merger").

21.     Defendant Oheka Catering, Inc. is a New York corporation with its principal place of business in Huntington, New York.  Defendants John Anthony Dipreta and Kathy Thompson are Banquet Managers of OCI.  Defendant Gary Melius is the company's sole shareholder and his wife Pamela Melius is its Chief Executive Officer.

22.     Defendant Oheka Management, LLC is a New York limited liability company with its principal place of business in Huntington, New York.  OML was created in connection with the Oheka Merger.

23.     Defendant Oheka Catering, LLC is a New York limited liability company with its principal place of business in Huntington, New York.  OCL was created in connection with the Oheka Merger.

24.     At all relevant times, the Oheka Entities have been utilized by the Defendants in furtherance of a single enterprise: the operations of Oheka Castle.

25.     Defendants John Doe 1 through 10 are unknown at this time, but will be named after they have been identified in the course of litigation.  The John Doe Defendants include other entities responsible for the employment practices complained of herein; and Oheka Castle management personnel responsible for the employment practices described in this Complaint.

## FACTS

26.     At times relevant to this Complaint, Defendants have operated the restaurant, catering and hotel operations at Oheka Castle.

27.     At times relevant to this Complaint, Defendants have employed, numerous non-exempt workers including but not limited to bartenders, servers, valets, kitchen workers, bakers, security guards, housekeepers, groundskeepers and maintenance workers.

28.     Within the statutory period for the federal and state overtime claims alleged in this Complaint, Defendants have failed to pay Plaintiff and other members of the Overtime Classes one and one-half times their hourly rate for all hours worked in excess of forty hours per week.

29.     Defendants maintained a strict "No Overtime Pay Policy" in the Castle.  Pursuant to this policy, Plaintiff and other non-exempt workers were expected to work overtime hours, without overtime premium pay.

30.     Defendants cheated workers out of overtime premium pay in several ways.  First, Defendants maintained a scam by which they regularly carried employee overtime hours into the next pay period during which Class members worked less than forty hours.  Defendants then paid workers at the regular hourly rate for their overtime hours, rather than the overtime rate.  Second, Defendants required workers at or near forty hours to clock out using Defendants' biometric handprint timekeeping system.  Plaintiff and Class Members were then required to continue working.  On these occasions, workers were not only deprived of an overtime premium, but they received no pay at all for those hours.

31.     At times relevant to this Complaint, Defendants failed to pay Plaintiff and other non-exempt Castle employees their wages in a timely manner.  Plaintiff's hourly pay for overtime hours was deferred for weeks and he never received overtime premium due to him. Moreover, Plaintiff has never been paid for the probationary shifts he was required to work in order to get the job.

32.     At times relevant to this Complaint, Defendants have failed to pay Plaintiff and other non-exempt servers and bartenders one hour's pay at the basic minimum hourly wage rate for days in which the spread of hours exceeded ten hours and/or for working a split shift.

33.     At times relevant to this Complaint, Defendants deprived Plaintiff and other bartenders and server of gratuities left for them by restaurant and catering patrons.

34.     Defendant Gary Melius personally confiscated cash tips left by Castle patrons for Plaintiff and other service staff.

35.     At times relevant to this Complaint, restaurant and catering patrons at Oheka Castle were charged by Defendants a "service charge" on top of the catering bill of up to 22%.

36.     Defendants retained the service charges and have not remitted them to Plaintiff and other Class Members.

37.     At times relevant to this Complaint, Defendants failed to properly notify Oheka Castle patrons that the service charge is not a gratuity and will not be distributed to the service staff.

38.     At times relevant to this Complaint, Defendants' conduct would lead a reasonable customer to believe that the service charges would be remitted to the service staff.

39.     Defendants' violations of the FLSA and NYLL were willful, intentional and not in good faith.

## COLLECTIVE ACTION ALLEGATIONS

40.     Plaintiff brings this case as an "opt-in" collective action on behalf of similarly situated employees of Defendants pursuant to 29 U.S.C. § 216(b).  The "Collective Class" is defined as follows:

> All current and former non-exempt employees who will are or have worked for Defendants within three years from the commencement of this action and who have not been paid one and one-half times the regular rate for all hours worked in excess of forty hours per week.

41.     Plaintiff, on behalf of himself and the Collective Class, seeks relief on a collective basis challenging Defendants' failure to pay a premium for overtime hours and failure to pay for overtime hours worked off-the-clock at all.

42.     The total number of Collective Class members is unknown at this time, but is in no event less than 100.  The identities of the Collective Class members may be determined from the

records of Defendants and the Collective Class members may easily and quickly be notified of the pendency of this action.

43.     Plaintiff is similar to other members of the Collective Class because he and the Collective Class have been unlawfully denied payment of overtime premiums due to them. Moreover, Plaintiff and the members of the Collective Class have been subjected to Defendants' illegal bookkeeping scheme.

44.     Plaintiff's experience is typical of the experiences of the other Collective Class members.  Defendants' failure to pay overtime wages at the rates required by the FLSA result from generally applicable policies or practices, namely the Castle's "No Overtime Policy" and do not depend on the personal circumstances of any individual members of the Collective Class.

## CLASS ACTION ALLEGATIONS

45.     This action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

46.     Plaintiff brings his New York State Law overtime claims as a class action pursuant to FRCP Rule 23 on behalf of a class consisting of:

> All persons employed by Defendants who were not paid one and one half times the regular rate for all hours worked in excess of forty hours per week, at any time from six years prior to the date of filing of this complaint through the entry of judgment in this action (the "NY Overtime Class").

47.     Plaintiff brings his New York State Law claim for untimely payment of wages as a class action pursuant to FRCP Rule 23 on behalf of a class consisting of:

> All persons employed by Defendants who were not paid at the regularly hourly rate for all hours worked, were not paid an overtime premium and/or were not paid spread of hours premium pay when due (the "Unpaid Wages Class").

48.     Plaintiff brings his spread of hours and unpaid gratuities claims as a class action pursuant to FRCP Rule 23 on behalf of a class consisting of:

All persons employed by Defendants who work or worked as bartenders and/or servers at any time from six years prior to the date of filing of this complaint through the entry of judgment in this action (the "Bartender/Server Class").

49.     The number of Rule 23 Class members identified above are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

50.     Common questions of law and fact predominate over questions limited to individual Rule 23 Class members.  These questions include:

a.  Whether Defendants paid members of the NY Overtime Class one and one-half times the hourly rate for all hours worked in excess of forty hours per workweek;

b.  Whether Defendants suffered or permitted Plaintiff and other server and bartenders to work in excess of ten hours in a single workday;

c.  Whether Defendants are liable to Plaintiff and other servers and bartenders for the payment of spread of hours premium pay;

d.  Whether Defendant Gary Melius confiscated cash and other tips intended by Castle patrons for  employees;

e.  Whether Defendants' conduct violated NYLL § 196-d;

f.  Whether Defendants' conduct was willful, intentional and/or not in good faith; and

g.  Whether Defendants should be ordered to compensate Plaintiff and the members of the Rule 23 Classes in an amount equal to the withheld service charges, unpaid overtime and spread of hours premium pay.

51.     The claims of the Plaintiff are typical of the claims of the Class members he seeks to represent.  The Plaintiff and the other members of the Rule 23 Classes were subject to the same unlawful policies of Defendants resulting in unpaid overtime, failure to pay timely wages for all hours worked, unpaid spread of hours premium pay and illegally withheld gratuities.

52.     Plaintiff and his counsel will fairly and adequately protect the interests of the Rule 23 Classes.  Plaintiff has no interests antagonistic to the interests of the Classes, and has retained counsel experienced in wage and hour and class action litigation.

53.     A class action is superior to other available methods to adjudicate this controversy. Plaintiff and members of the Rule 23 Classes lack the resources to adequately prosecute separate claims and the amounts that each individual stands to recover make individual cases impractical to pursue.  The only practical chance for the workers to recover the wages and tips owed to them is thorough a class action.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT - OVERTIME

54.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

55.     Plaintiff brings this claim on behalf of himself and the Collective Class.

56.     At all relevant times, Defendants have been, and continue to be, "employers" and/or joint employers engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

57.     At all relevant times, Defendants have employed, and/or continue to employ, "employee[s]," including Plaintiff and all similarly situated employees.

58.     At all relevant times, the Oheka Entities have, individually and cumulatively, had gross operating revenues in excess of $500,000.00 and satisfy the threshold test for the "enterprise" requirement under the FLSA.

59.     Defendants employ and have employed numerous non-exempt employees at Oheka Castle.

60.     The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees for services performed and to compensate them at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

61.     Defendants failed to pay Plaintiff and the Collective Class members an overtime premium for all hours worked in excess of forty in a workweek.

62.     Defendants' violation of the overtime requirement of the FLSA was part of their regular business practice and constituted a pattern, practice, and/or policy.

63.     Defendants' violations of the FLSA were willful, intentional and/or not in good faith as evidenced by Defendants' fraudulent recordkeeping system and requirement that workers punch out and keep working.  The Castle's "No Overtime Pay Policy" was specifically designed to deprive Plaintiff and the Collective Class members of appropriate overtime payments.

64.     As a result of Defendants' violation of FLSA, Plaintiff and the Collective Class have been injured and are entitled to actual and liquidated damages, attorneys' fees, costs, disbursements and interest thereon pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW - OVERTIME

65.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

66.     Plaintiff brings this cause of action on behalf of himself and the NY Overtime Class.

67.     At all times relevant to this action, Defendants and Plaintiff had an employer/employee relationship within the meaning of NYLL §§ 2 and 651.

68.     Defendants willfully required, suffered or permitted Plaintiff to work overtime and willfully failed to pay them overtime compensation of one and one-half times the regular rate of pay for each hour in excess of forty hours in a workweek as required under NYLL § 650; § 12 NYCRR § 146-1.4.

69.     Defendants' violations of the overtime requirements of the NYLL were part of their regular business practice and constituted a pattern, practice, and/or policy.

70.     Defendants' violations of the overtime requirements of the NYLL were willful, intentional and/or not in good faith as evidenced by Defendants' fraudulent recordkeeping system and requirement that workers punch out and keep working.  The Castle's "No Overtime Pay Policy" was specifically designed to deprive Plaintiff and the Collective Class members of appropriate overtime payments.

71.     As a result of Defendants' NYLL violations, Plaintiff and the members of the NY Overtime Class are entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid overtime wages, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to NYLL § 663(1).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW - SPREAD OF HOURS PREMIUM PAY

72.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

73.     Plaintiff brings this claim on behalf of himself and similarly situated members of the Bartender/Server Class.

74.     Plaintiff and members of the Bartender/Server Class routinely worked more than ten hours in a workday.

75.     Defendants have willfully failed to pay Plaintiff and the members of the Bartender/Server Class additional compensation of one hour's pay at the minimum wage for each day during which they worked more than ten hours.

76.     Defendants' failure to pay Plaintiff and the members of the Bartender/Server Class spread of hours compensation for each day they worked in excess of ten hours is a violation of NYLL Article 19 § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, NYCRR § 146-6.

77.     Defendants' failure to pay spread of hours premium pay was part of their regular business practice and constituted a pattern, practice, and/or policy.

78.     Due to Defendant's violation of NYLL, Plaintiff and the Bartender/Server Class are entitled to recover from Defendants an award of damages for their unpaid compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL § 663.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PAY TIMELY WAGES

79.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

80.     Plaintiff brings this claim on behalf of himself and similarly situated members of the Unpaid Wages Class.

81.     NYLL § 191 requires employers to pay manual workers on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned.  For a terminated employee, the employer is required to pay wages not later than the regular pay day for the pay period during which the termination occurred.

82.     As a result of Defendants' violations of the NYLL and their failure to timely pay all wages (including compensation for all hours worked and overtime and spread of hours premium

pay when due), Plaintiff and the members of the NY Overtime and Unpaid Wages Classes have been, and continue to be damaged.

83.     Defendants' failure to pay their employees in a timely manner pursuant to the NYLL was part of their regular business practice and constituted a pattern, practice, and/or policy.

84.     Defendants' failure to pay timely wages was not in good faith as evidenced by a) Defendants' failure to pay Plaintiff and other workers during their probationary period; b) Defendants' fraudulent recordkeeping system designed to make it appear as if workers were not working overtime when they were; c) Defendants' instruction to workers to clock out and continue working; and d) Defendants' complete failure to pay servers and bartenders spread of hours premium pay.

85.     Plaintiff and the members of the Unpaid Wages Class seek monetary damages, liquidated damages, reasonable attorneys' fees and costs and disbursements, and prejudgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW - UNLAWFUL WITHOLDING OF GRATUITIES

86.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

87.     Plaintiff brings this claim on behalf of himself and similarly situated members of the Bartender/Server Class.

88.     Plaintiff and the members of the Bartender/Server Class are employees under NYLL § 190(2).

89.     Defendants are Plaintiff's employers under NYLL § 190(3).

90.     Under NYLL § 196-d, employers may not "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

91.     Defendants unlawfully withheld and retained gratuities and portions of gratuities that reasonable customers would believe would be distributed to members of the Bartender/Server Class, including cash tips, "service charges," and other amounts.

92.     Defendants' conduct was willful as evidenced by Defendant Gary Melius' personal confiscation of gratuities left for Plaintiff and other service staff.

93.     By withholding gratuities and portions of gratuities Defendants have violated NYLL § 196-d and is liable to Plaintiff and the members of the Bartender/Server Class in an amount to be determined at trial, liquidated damages,  plus pre and post-judgment interest, attorney's fees and costs.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court issue Orders:

A.     conditionally certifying the action as a Collective Action and authorizing the form and method of notice to be issued to the members of the Collective Class;

B.     certifying the action as a class action pursuant to FRCP Rule 23, certifying Plaintiff as Class Representatives and designating Plaintiff's counsel as Class Counsel;

C.     issuing a judgment for Plaintiff and the members of the Classes for all statutory, compensatory, consequential and liquidated damages or any other damages authorized by law or equity, sustained as a result of Defendants' unlawful conduct for which Defendants are jointly and severally liable, as well as pre-judgment and post-judgment interest;

D.     awarding Plaintiff, his counsel and members of the Classes their reasonable attorneys' fees, costs and expenses incurred in this litigation.

E.     enjoining Defendants from continuing the conduct alleged herein; and

F.     any and all other relief which the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff seeks a trial by jury of all issues so triable in this action.

Dated: March 6, 2014

**THE MARLBOROUGH
LAW FIRM, P.C.**

By:  /s/ Christopher Marlborough
Christopher Marlborough
chris@marlboroughlawfirm.com
555 Fifth Avenue, 14th Floor
New York, NY 10017
Telephone: (212) 991-8960
Facsimile: (212) 991-8952

Attorneys for Plaintiff